**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL WINSTON,                                       )
                                                                            )
                                   Plaintiff,                      )          Case No.  1:10-cv-74-SJM
                                                                            )
                    v.                                                  )
                                                                            )
KAREN DANIELS, *et al.*,                               )
                                                                            )
                                   Defendants.                  )


## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.,

      Plaintiff Michael Winston, a frequent litigator in this Court, has filed this civil action based on various proceedings against him in the McKean County Magisterial and Common Pleas Courts that arose out of an altercation with his sister, Karen Daniels. Named as Defendants are Daniels, John H. Pavlock (President Judge of the McKean County Court of Common Pleas), William Todd, (a McKean County Magisterial District Judge), Ray Learn (the McKean County District Attorney), "Trooper Palmer" (a Pennsylvania State Trooper), Bonnie Moore Howard[1] (the McKean County Prothonotary), and Christopher Antalics (an attorney employed by Northwest Legal Services in McKean County). As grounds for this Court's jurisdiction, Winston purports to invoke various federal constitutional and statutory provisions. All Defendants other than Daniels have entered appearances and have moved to dismiss the complaint. Because Winston's federal claims are patently frivolous and incapable of a curative amendment, they will be dismissed with prejudice.

---

[1] This Defendant is incorrectly identified in the case caption and complaint as "Bonii Moore Howard." We will use her correct name herein.

# I.    STANDARD OF REVIEW

A.  Pro Se Pleadings

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C.Cir.1992); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir.1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in the pleadings in favor of the complainant.  *Gibbs v. Roman*, 116 F.3d 83 (3d Cir.1997).  *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Company*, 906 F.2d 100, 103 (3d Cir.1990) (same).  Because Winston is proceeding pro se in this case, the foregoing standards will be applied to his papers.

B.  Motion to Dismiss

In reviewing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims at issue must be viewed in the light most favorable to the complainant and all the well-pleaded allegations must be accepted as true.  *Erickson v.*

*Pardus*, 551 U.S. 89, 95 (2007).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957)).  *See also Ashcroft v. Iqbal*, --- U.S., ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir.2004) (*citing Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997)).  Nor must a court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 556 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (*quoting Iqbal*, --- U.S. at ----, 129 S. Ct. at 1949) (alteration in the original).  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  *Smith v. Sullivan*, 2008 WL 482469, at *1 (D. Del. February 22, 2008) (*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008)).  "This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."

*Phillips*, 515 F.3d at 232 (*quoting Twombly*, 550 U.S. at 556 n. 3).

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal,* when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal,* where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009).

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

According to the complaint and materials appended thereto, this case stems from a dispute involving a family property which was gifted to Winston and Daniels. On November 21, 2009, an argument arose between Winston and Daniels which resulted in Daniels calling the 911 center and allegedly giving false statements to the police concerning Winston. This in turn resulted in a criminal citation and summons being issued against Winston by Defendant Palmer on December 1, 2009. The

4

citation/summons alleges that Winston "with intent to harass, annoy, or alarm [Daniels] did strike, shove, kick or otherwise subject another to physical contact by pushing [Daniels] in the chest causing her to fall." (Complaint Appendix [1-1] at p. 28.)

The complaint alleges that the police interviewed Winston and two eyewitnesses concerning this incident and that, despite their lack of evidence justifying an arrest, the aforementioned criminal citation was filed against him. On December 23, 2009, Defendant Todd issued a notice of trial on the summary harassment charge, to be held on January 13, 2010. (Complaint appendix [1-1] at p. 29.) According to the complaint, Daniels had told the police on the day of the incident that she had no injuries, but she went to the hospital several weeks later because someone told her to. Winston claims that this was "corruption" done to "harm" and "attack" him and that it was carried out in a manner "that would not be heard … in front of a jury [or] eyewitnesses." (Complaint [1-1] at p. 4.)

The complaint avers that, following the incident on November 21, 2009, Winston's parents contacted a Judge Steven Minor of Potter County and indicated that they wanted the property transferred back in their names because they would not tolerate Daniels' conduct. Daniels was subsequently contacted by Judge Potter and advised to come in and sign the property back to her parents. Allegedly, Daniels telephoned her parents on December 3, 2009 to inform them that she had "found someone to help [her] get [Winston] out from here." (Complaint [1-1] at p. 3.)

Although not directly stated in the complaint, this alleged statement by Daniels is presumably understood by Winston to be a reference to Daniels' efforts, undertaken that same day, to obtain a temporary PFA order against him. (Complaint Appendix [1-1]

at pp. 20-26.)  In fact, the complaint appendix shows that, on December 3, 2009,

Daniels filed an application for a temporary PFA order, based on the following

accusations:

> On about Saturday, November 21, 2009 at approximately 12:00 PM [Daniels] and [Winston] had been arguing about the care of the farm animals.  [Winston] grabbed [Daniels'] right arm and swung [Daniels] around.  [Daniels] went to the ground on one knee.  [Daniels] got up and started to leave.  [Winston] started poking [Daniels] in the chest and told [Daniels] "you're going to listen to me.["] [Winston] wouldn't let [Daniels] go.  [Winston] continued to poke [Daniels] very hard in the chest and pushed [Daniels] against the barn wall and [Daniels] fell to the ground again.  [Winston] continued to yell at [Daniels].  [Daniels] told [Winston] to quit hitting her and knocking her to the ground.  [Daniels] got up and [Winston] continued to yell at [Daniels][;] [Winston] was so close to [Daniels] that he was spitting on [Daniels].  [Winton] again pushed [Daniels] against the barn wall and [Daniels] fell to the ground.  [Daniels] was able to get away.  [Daniels] has gone to the [Bradford Regional Medical Center] for her injuries.

(Complaint Appendix [1-1] at p. 22.)

Defendant Pavlock granted Daniels' request for a temporary PFA order on

December 3, 2009, and scheduled a final PFA hearing for December 17, 2009.  (*Id*. at

p. 20.)  Winston avers that Pavlock "perjured" himself during the December 17

proceeding inasmuch as he cancelled the hearing and simply entered a final PFA order

without holding any proceeding, despite the fact that Daniels, her husband, and

Winston's two eyewitnesses were all present at the scheduled time.   Winston alleges

that he found this out only months later, after unsuccessful attempts to get information

from the court and from Northwest Legal Services.

The complaint goes on to aver that Winston's parents have become victims of

the "ongoing corruption in this state" (Complaint [1-1] at p. 5) to the extent that they

have become prisoners in their own home and that Daniels does not let her

6

grandchildren have contact with Winston or with Winston's parents. Winston alleges that Daniels, or other of her family members, have committed child abuse by misinforming Daniels' grandchildren that it is Winston and his parents that do not wish to have contact with them and by dragging the children back into the house crying when they attempt to visit. According to the complaint, this "child abuse" has been reported to the police but there has been no response.

Winston avers that the foregoing incidents are part of a grand conspiracy, whereby the named Defendants "had specific instructions, and everyone had directions of what and how, and times, intentionaly [sic], to pull this violent, gross, illmoral[sic], injust [sic], corruptly criminal act together." (Complaint [1-1] at p. 5.) He complains that his parents get harassing phone calls and that he and his parents receive "hate mail." He further complains that Daniels has not said she is sorry to her parents, or even talked to them, and that Winston's father tried to talk to Daniels but Daniels "locked him out." (*Id*. at p. 6.) Winston alleges that "[t]he rest of the Defendants… are involved in several civil actions because of [their] dishonesty, aiding and [abetting]…" (*Id.*)

Winston goes on to complain that "every single allegation in this case that Plaintiff has been acused [sic] of doing is in fact false." (Complaint [1-1] at p. 7.) Indeed, he insists that he has never even confronted Daniels or raised his voice to her or her family, that he is not, and has never been a farmer, that he has fed Daniels' animals when asked to do so by her, but that the animals in question belong to Daniels, not him. (*Id.*)

As relief, Winston seeks $7 million in damages. He also requests a ruling by this Court voiding Defendant Pavlock's PFA order and directing that all Defendants sign a

written apology to his parents stating that "no further attacks will continue." (Complaint [1-1] at 7.)

## III.    DISCUSSION

In this case, all of the Defendants, with the exception of Daniels, have filed a motion to dismiss the complaint. Plaintiff was given an opportunity to respond; however, his only filings in response have been letters indicating that he intends to proceed with all of his cases in the United States Supreme Court.

Aside from the pending motions to dismiss, this Court is required to review the instant complaint in accordance with the provisions of 28 U.S.C. §1915, which establishes the criteria for allowing an action to proceed *in forma pauperis*. Of particular importance is subsection §1915(e)(2)(B), which requires a federal district court to dismiss any case, even on its own motion, if the court determines that the action is, among other things, frivolous, malicious, or lacking any viable claim for relief.[2] Although

---

[2] Section 1915(e) states, in pertinent part:

> **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> ***
> **(B)** the action nor appeal –
> **(i)** is frivolous or malicious;
> **(ii)** fails to state a claim on which relief may be granted; or
> **(iii)** seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Although much of 28 U.S.C. § 1915 deals with prisoners, it is widely recognized that § 1915(e)(2) applies to both prisoner and nonprisoner cases. *See, e.g., Jayne v. Pike County Correctional facility*, Civil No. 3:CV-07-1113, 2007 WL 2972579 at *1 n.1

courts are generally required to permit the plaintiff an opportunity to file a curative amendment before dismissing the complaint, dismissal without leave to amend is justified when, *inter alia*, amendment would be futile. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004).

Here, Winston's allegations, to the extent they are intelligible, fail to state any claim upon which relief may be granted. Many of the federal statutory and constitutional provisions cited within the "jurisdictional" section of the complaint are facially inapplicable and lack any relevance to the factual averments stated in the complaint.[1] Other sources of law cited within the complaint are patently insufficient to withstand a Rule 12(b)(6) motion because they confer no substantive rights upon the Plaintiff and/or no private right of action.[2] Winston also cites, in support of this Court's "jurisdiction,"

---

(M.D. Pa. Oct. 10, 2007) (citing cases), *aff'd in part and rev'd in non-relevant part*, No. 07-4269, 2009 WL 3022136 (3d Cir. Sept. 23, 2009)(slip op.); *Weimer v. Vanorsdale*, No. 07cv0671, 2007 WL 1653623 at *1 n.1 (W.D. Pa. June 5, 2007) (citing cases).

[1] By way of example, Winston purports to rely on various provisions of the civil rights laws which have no apparent applicability to the facts as alleged. *See* 42 U.S.C. §§ 1985, 1986, 1987, and 1988. He also appears to be invoking the equal protection and privileges and immunities clauses of the Fourteenth Amendment.

[2] For example, Winston invokes numerous provisions of the federal criminal code, *e.g.* 18 U.S.C. §§ 2, 3, 4, 241, 242, 245, 1341, 1505, 1513, 1515, and 1621, which he has no personal authority or standing to enforce. *See, e.g, Walthour v. Herron*, Civil Action No. 10-01495, 2010 WL 1877704 at *3 (E.D. Pa. May 6, 2010) (no private right of action exists under 18 U.S.C. §§ 241, 242, 245, 247, 371 or 1951) (slip copy); *Jones v. Lockett*, 2009 WL 2232812 at *8 (W.D. Pa. July 23, 2009) (slip copy) ("It is clear that the criminal statutes invoked by Plaintiff, i.e., 18 U.S.C. §§ 241, 371 and 1341 do not provide for a private cause of action. In other words, those statues do not confer a right to a person.") (collecting cases); *People ex rel. Snead v. Kirkland*, 462 F. Supp. 914, 920 (E.D. Pa.1978) ("[18 U.S.C. § 245] permits federal prosecution for interference with

various abstract legal theories and concepts such as "real estate fraud," "hate crimes" and "torture," none of which confer a private right of action or a basis for exercising federal subject matter jurisdiction over his claims.

In light of the facts alleged, the most plausible basis for a federal action is 42 U.S.C. § 1983 which provides a private right of action to:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws..."

42 U.S.C.A. § 1983.[3]  In order to state a viable claim under § 1983, however, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988)).  *See also Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  Here, the first criterion has not been satisfied with respect to several of the Defendants, while the second criterion has not been satisfied at all.  Moreover, Winston's claims against many of the Defendants would be barred, in any case, on the basis of immunity.  To illustrate the deficiencies, we will consider Winston's allegations as they pertain to each of the named Defendants.

---

a long list of federally protected activities; it confers neither substantive rights nor a private right of action for damages").

Similarly, Winston has no personal authority to enforce certain provisions of the federal civil rights laws upon which he relies.  *See, e.g., Carpenter v. Ashby*, 351 Fed. Appx. 684, 687 (3d Cir. Sept. 10, 2009) (no private right of action exists under 42 U.S.C. §§ 1987 or 1988).

[3] To the extent Plaintiff is attempting to state a claim under § 1983, this Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343(a).

A.  Claims Against Defendant Pavlock

Defendant Pavlock, acting in his capacity as President Judge of the McKean County Court of Common Pleas, entered the temporary and final PFA orders against Winston.  Signed on December 3 and December 19, 2010, respectively, these orders prevented Winston from having any contact with Daniels.

In his complaint, Winston avers that Defendant Pavlock somehow "perjured" himself during the PFA proceeding over which he presided.  Winston further avers that Daniels, her husband, and Winston's two eyewitnesses were present at the scheduled hearing, but that Judge Pavlock canceled it and entered a final PFA order without any court proceeding.  This, he contends, was a "clear violation" -- of what, he does not specify.

More generally, Winston avers that Pavlock has run the McKean County Courts of Common Pleas in a corrupt fashion.  He claims that Pavlock is the leader of the "gang" of Defendants that have been involved in various civil actions and, through their dishonesty, Pavlock and the other Defendants have caused him harm.   Winston further claims that Pavlock has acted without having any jurisdiction over him.

In addition, Winston has appended to his complaint numerous newspaper articles covering complaints and/or lawsuits directed against various government officials and agents operating in McKean County.  Among these are articles discussing a dispute which arose between Tom Riel, the Mayor of Bradford, Pennsylvania, and Defendant Pavlock, when he was the McKean County District Attorney.  Reportedly, this dispute arose from a belief on Riel's part that "a few rogue members of law enforcement" had attempted to frame him on drug charges, supposedly in an effort to intimidate him and

prevent him from appointing a new police chief.  According to the newspaper account,

Riel believed that law enforcement officers had wrongfully arrested an individual by the

name of Dennis Fuino on charges of armed robbery as a result of Fuino's refusal to

assist them in framing Riel.  The newspaper accounts indicate that Defendant Pavlock,

as District Attorney, held a press conference to clarify the circumstances that had led to

Fuino's arrest and to inform the public that Riel's concerns had been referred to the

state Attorney General's office for further investigation.  A subsequent article reports

that Pavlock and Riel discussed the situation one-on-one and resolved their

disagreement.

Also appended to the complaint is an article by Pavlock, in his capacity as

President Judge of the McKean County Court of Common Pleas, explaining the

importance of jury service and advising about the possible sanctions that may result

from failing to comply with jury service.

The only other factual allegation implicating Pavlock is Winston's assertion

(included among the appended materials) that the PFA orders have caused him "great

harm and further attacks by the State of [Pennsylvania]" and have "put a target on [his]

forehead." (Complaint exhibits [1-1] at p. 36.)  Winston complains that the courts

"refuse to take any responsibility for this" and "again, refused protection." (*Id.*)  Winston

further complains that "[t]his action did nothing fore [sic] Plaintiff except [sic] made these

past six years worse, and the federal government could care less." (*Id.*)  He states that

he has been left "to fend for himself, and this 'war' continues, with no end in sight, and

no one in the entire United States cares." (*Id.*)

Giving Winston's complaint the benefit of the most generous and sensible interpretation, it would appear he is asserting a claim under § 1983 for the alleged violation of his due process rights in connection with the December 2009 PFA proceedings. Even construed in this manner, his claim fails for several reasons.

To begin, the Eleventh Amendment bars Winston's claims against Defendant Pavlock to the extent Pavlock is being sued in his official capacity. Eleventh Amendment immunity protects all states and state entities from suit in federal court, unless Congress has abrogated the immunity or the state consents to be sued. U.S. CONST. amend. XI; *Lombardo v. Pennsylvania Dept. of Public Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008); *United States v. Union Gas Co.*, 832 F.2d 1343, 1346 (3d Cir. 1987). Importantly, the Commonwealth of Pennsylvania has not consented to be sued. 42 Pa. C.S.A. §8521(b) and 1 Pa. C.S.A. §2310. Nor did Congress, in enacting 42 U.S.C. § 1983, abrogate state sovereign immunity; accordingly, claims brought under that statute are subject to Eleventh Amendment immunity. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98 (1984); *Collins v. Sload*, 212 Fed. Appx. 136, 140, 2007 WL 43380 n.5 (3d Cir. Jan. 2, 2007).

All courts and agencies of the Commonwealth's unified judicial system are part of the Commonwealth government and therefore subject to state sovereign immunity. *See* 42 Pa. C.S.A. § 102 (defining "Commonwealth government" to include "the courts and other officers or agencies of the unified judicial system"); *Benn v. First Judicial District*, 426 F.3d 233 (3d Cir. 2005) (holding that a judicial district was entitled to assert Eleventh Amendment immunity as an absolute bar to suit under the Americans with

Disabilities Act).  Further, the term "court" is defined to include "any one or more of the judges of the court."  *See* 42 Pa. C.S.A. § 102.

A suit may be barred by the Eleventh Amendment even though a state is not named a party to the action, so long as the state is deemed to be the real party in interest.  *Benn*, 426 F.3d at 239.  Also, a suit brought against a state official in his official capacity is deemed to be a suit against the state.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

Thus, to the extent Defendant Pavlock is being sued in his official capacity as President Judge of the McKean County Court of Common Pleas, the real party in interest is the McKean County Court of Common Pleas, which is part of Pennsylvania's unified judicial system.  Winston's claims against Defendant Pavlock in his official capacity are therefore barred by Eleventh Amendment immunity.

In addition, judicial defendants sued in their official capacities are not considered "persons" within the meaning of § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63 (1989) (neither state nor its officials acting in their official capacities were "persons" under federal civil rights statute); *Rode v. Dellarciprete*, 617 F. Supp. 721, 722-23 (M.D. Pa. 1985) (a state and its agencies are not "persons" for purposes of §1983 and § 1985).  Accordingly, Winston's official-capacity claims against Defendant Pavlock fail for this reason as well.

Winston's claims against Pavlock in his individual capacity are also barred under the doctrine of judicial immunity.  It is well established that judges are absolutely immune from lawsuits with respect to all actions taken in their judicial capacities.  See *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("As early as 1872, the Court recognized

that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, (should) be free to act upon his own convictions, without apprehension of personal consequences to himself.' … For that reason the Court held that 'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts…') (alteration in the original) (internal citations and footnote omitted).  *See also Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts.")(*citing Mireles v. Waco*, 502 U.S. 9, 12 (1991)).

As a matter of public policy, this immunity is necessarily broad:  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citation omitted).  Nor will immunity be defeated because a judge committed "grave procedural errors" or conducted proceedings in an "informal and ex parte" manner, or took actions that were "unfair" or controversial.  *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2005).  Indeed, judicial immunity is not affected by the judge's motives, *see Gallas, supra,* at 772, and it applies even where the judge is accused of having acted as part of a conspiracy.  *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

Here, Defendant Pavlock is being sued for his actions in connection with a PFA proceeding – a matter which clearly involves a judicial function and over which Pavlock

undoubtedly had subject matter jurisdiction. Under the doctrine of judicial immunity, Winston's suit against him, based on those judicial functions, cannot proceed.

Moreover, Winston's claims against Pavlock arising out of the disputed PFA proceeding are barred by the Rooker-Feldman doctrine. Pursuant to this well-accepted doctrine, federal district courts have no authority to review the decisions of state courts, as review of such decisions may be obtained only in the state appellate courts and the Supreme Court of the United States. *See generally District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Gary v. Braddock Cemetery,* 517 F.3d 195, 201 (3d Cir. 2008); *Blake v. Papadakos*, 953 F.2d 68, 71 (3d Cir. 1992). This is true even where the plaintiff alleges that the state court decision deprived him of due process or other federally protected rights. *See Feldman*, 460 U.S. at 485. As long as the constitutional claims presented to the federal district court is "inextricably intertwined" with the state court's action, the district court is barred from undertaking what, in essence, is an appellate review of the state court ruling. *Id.* at 483-84 n. 16. *See Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (under the Rooker-Feldman doctrine, a "losing party in state court is barred from seeing what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.").

Here, Winston apparently complains that Defendant Pavlock improperly entered a final PFA order against him without first holding a hearing – action which he claims was "a clear violation" of his rights. Because Winston's complaint seeks a determination by this Court which would effectively void Defendant Pavlock's state court

ruling, it is barred by the Rooker-Feldman doctrine. *See Focus v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (Rooker-Feldman bars claims which "would effectively reverse the state decision or void its ruling") (citation omitted).

The remainder of Winston's allegations against Pavlock, even if they could surmount the foregoing hurdles, are insufficient on their face to state a cognizable legal claim. Winston's vague and conclusory allegations that Pavlock is somehow involved with the other Defendants in a "conspiracy" against him is patently deficient under the standards set forth in *Iqbar* and *Fowler, supra.* The Third Circuit Court of Appeals has admonished that "a conspiracy claim 'must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 Fed. Appx. 325, 328, 2010 WL 1141397 at **2 (3d Cir. Mar. 25, 2010) (*quoting Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*)). Moreover, while "direct evidence of a conspiracy is rarely available and ... the existence of a conspiracy must usually be inferred from the circumstances ..., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" *Id. (quoting Capogrosso, supra*, at 184).

No such factual basis is alleged here. To the extent Winston has appended news articles concerning the previously resolved dispute between Riel and Pavlock stemming from Riel's perception that he was being framed by certain McKean County law enforcement officers, these materials are insufficient to support a viable legal theory of conspiracy on the part of Pavlock personally, let alone a viable theory that Pavlock has been conspiring against Winston. Defendant Pavlock's news letter regarding the importance of jury duty and possible penalties for failing to perform jury duty are

17

similarly insufficient to support a viable claim. In sum, Plaintiff's allegations of

"conspiracy" and "persecution" – which have been a constant theme in his sundry civil

actions -- are nothing more than conclusory statements and fail to allege a viable factual

basis for liability. For all of these reasons, the claims against Pavlock will be dismissed.

B. Claims Against Defendant Todd

Winston's claims against Defendant Todd are more tenuous still. Although the

complaint does not contain any averments directed specifically against Todd, it vaguely

alleges corruption and perjury in connection with the summary harassment proceedings

that arose out of Todd's judicial district. The allegations are threadbare and facially

insufficient to state a claim against Todd that is plausible on its face. *See Twombly*, 550

U.S. at 570.

Beyond this deficiency, Winston's claims against Todd are barred under the

Eleventh Amendment. Defendant Todd, as a district justice, is considered part of the

Commonwealth's unified judicial system. *See* 42 Pa.C.S.A. §301 (the Commonwealth

unified judicial system includes magisterial district judges). Accordingly, to the extent

Defendant Todd is being sued in his official capacity, he, like Defendant Pavlock, is

entitled to assert Eleventh Amendment immunity. *See Miller v. Hogeland*, No. CIV. A.

00-516, 2000 WL 987864 at *2 (E.D. Pa. July 18, 2000) ("The Eleventh Amendment

bars suit against a District Magistrate in his/her official capacity.")(*citing Fox v. Lee*, No.

CIV. A 00-2196, 2000 WL 760318 at *1 (E.D. Pa. June 8, 2000) and *Edelman v. Jordan*,

415 U.S. 651, 663 (1974)). In addition, a district magistrate, acting in his/her official

capacity, is not a "person" for the purposes of Section 1983. *Miller, supra,* at *2; *Fox v. Lee,* 99 F. Supp. 2d 573, 575 (E.D. Pa. 2000).

To the extent Todd is being sued in his individual capacity for actions taken in his role as a judicial officer, Defendant Todd, like Defendant Pavlock, is entitled to absolute immunity from suit. "The doctrine of judicial immunity applies equally to courts of limited jurisdiction, such as district justices, as to courts of general jurisdiction." *Martin v. Bicking*, 30 F. Supp. 2d 511, 512 (E.D. Pa. 1998) (citing cases). Here, Winston's claims against Defendant Todd – to the extent they can be discerned – relate solely to judicial actions undertaken by Todd in his capacity as a magisterial district justice. Todd is therefore immune from suit in his individual capacity.

Finally, to the extent Winston is seeking an order from this Court that would render the proceedings in Defendant Todd's court null, void, or otherwise ineffective, Winston's claims are barred by the Rooker-Feldman doctrine. *See Fox*, 99 F. Supp. 2d at 576 (where plaintiff's § 1983 claim for monetary and equitable relief against a district justice would require the district court to determine that the district justice's dismissal of the plaintiff's state court action was in error, plaintiff's claim was barred by Rooker-Feldman doctrine).

C. Claims Against Defendant Learn

Also named as a Defendant in this action is Ray Learn, the McKean County District Attorney. Nowhere in the complaint does Winston make factual averments pertaining to Learn personally. At most, we may presume (although it is not alleged) that Defendant Learn's office may have had some involvement in the PFA proceedings

and/or the summary harassment citation filed against Winston.  Assuming this is the case, Winston's allegations are deficient.

For one, Winston has failed to allege any conduct by Learn personally which violated his rights.

> In order to be liable for a § 1983 violation, an individual defendant must have been personally involved in the deprivation of the plaintiff's rights. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).  A supervisor's personal involvement may be shown by establishing that the supervisor had actual knowledge of, and acquiesced in, the deprivation.  *Robinson*, 120 F.3d at 1294.  It is not sufficient, however, for a plaintiff to allege that an individual had constructive knowledge of his or her subordinates' unconstitutional conduct simply by virtue of his or her supervisory position.  *Regan v. Township of Lower Merion*, 1999 WL 999381 at *5 (E.D. Pa. Oct. 28, 1999) ("[C]onstructive knowledge by virtue of being the supervisor of subordinates who may have actual knowledge is not sufficient to support liability under § 1983."); *DeBellis v. Kulp*, 166 F. Supp.2d 255, 277 (E.D. Pa.2001) ("The fact that [defendants] are in supervisory positions does not, standing alone, establish their liability."); *see e.g., Rode*, 845 F.2d at 1208 (holding that grievances actually filed with the Governor's office were "insufficient to show that [he] had actual knowledge of [the plaintiff's] alleged harassment" and noting that "a contrary holding would subject the Governor to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the Governor's [O]ffice of [A]dministration...."); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479 (3d Cir.1990) (holding that supervisory liability applied where "it would be incomprehensible" for the supervisor not to have noticed the misconduct and "impossible for [him] to contend that he overlooked" such misconduct).  Indeed, to hold otherwise would arguably vitiate the distinction between liability based on a theory of personal involvement and that based on a theory of respondeat superior, thereby undermining the holding of *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978); namely, that one "cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.* at 691.

*McQueen v. Philadelphia Housing Authority*, No. Civ. A. 02-8941, 2003 WL 22533726 at *3 (E.D. Pa. Sep. 26, 2003).

In this case, Winston has offered no averments establishing that Learn had personal knowledge of the events that he claims constituted wrongdoing, much less has Winston alleged Learn's personal involvement. The allegations are therefore facially insufficient to establish Learn's personal involvement in the alleged violation of Winston's rights.

In addition, however, Learn is entitled to absolute prosecutorial immunity with respect to any claim for damages stemming from his actions to the extent those actions are intimately associated with the judicial phase of the criminal process. *See Imbler v. Pachtman,* 424 U.S. 409, 431 (1976); *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). Here, there are no allegations against Learn personally but, to the extent he or his office were involved in approving the filing of the criminal harassment charge against Winston and/or prosecuting the application for the PFA order, these are clearly functions intimately associated with the judicial phase of the criminal process and, therefore, prosecutorial immunity applies.

The only other mention of Learn comes from the news articles appended to the complaint which reveal that Learn prosecuted the case against Dennis Fuino, which figured into the allegations by Tom Riel that he had the subject of a police set-up. Suffice to say that nothing in the articles indicates that Learn was personally involved in prosecutorial misconduct and, moreover, the Fuino case is totally unrelated to Winston's dispute with his sister. Accordingly, nothing in the appended news articles can be read as support for Winston's claim against Learn.

D.  Claims Against Defendant Howard

The complaint also names as a Defendant Bonnie Moore Howard, the Prothonotary and Clerk of Records of McKean County.  Although Howard is named in the caption of the complaint and listed as a Defendant, there are no factual averments in the complaint directed against her personally.  In fact, given the facts alleged, there is no obvious connection between Defendant Howard and the alleged wrongs of which Winston complains.  Therefore, the complaint, as it relates to Defendant Howard, fails to comply with the requirement of *Bell Atlantic Corp. v. Twombly*, *supra*, at 570, that the plaintiff's averments include sufficient factual matter, accepted as true, to "state a claim that is plausible on its face."  *See also Thakar, supra*, at **2 ("While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, …. a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se.")(internal citation omitted).

Presumably, Howard is being sued in connection with actions she took in connection with her official duties as the McKean County Prothonotary and Clerk of Records.  As the court prothonotary and clerk of records, however, Howard is immune from suit under the doctrine of absolute judicial immunity, which extends to quasi-judicial officials whose "activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge."  *See Gonzales v. Clerk of Courts of Berks County*, 1991 WL 133647 at *2 (E.D. Pa. July 16, 1991) (*citing Jodeco Inc. v. Hann*, 674 F. Supp 488, 497 (D.N.J.1987)).  In addition, it has long been recognized by our circuit court of appeals that "any public officer acting pursuant to a court directive is also immune from suit."  *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d

22

Cir.1969) (prothonotary, acting pursuant to court directive, was entitle dto absolute immunity from § 1983 claim).  *See also Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir.1975) ("... where the defendant is directly involved in the judicial process, he may ... be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge."); *Ginsburg v. Stern*, 125 F. Supp 596, 602 (W.D. Pa. 1954), *aff'd*, 225 F.2d 245 (3d Cir.1955) ("... no basis in law exists whereby civil liability can be imposed upon a public official acting pursuant to court order and direction.").

Numerous cases have recognized that immunity extends to court personnel such as prothonotaries.  *See, e.g., Boyce v. Dembe,* No. 01-4199*,* 47 Fed. Appx. 155, 159, 2002 WL 3151328 at **3 n.4 (3d Cir. Sept. 27, 2002); *Barnes v. Catalde*, C.A. No. 09-67 Erie, 2009 WL 3769353 at *3 (W.D. Pa. Nov. 10, 2009); *Grine v. Colburn's Air Conditioning and Refrigeration*, Civil Action No. 09-11 Erie, 2009 WL 2634179 at *5 (W.D. Pa. Aug. 25, 2009).  Consequently, Defendant Howard, as the Prothonotary and Clerk of Records of McKean County, enjoys immunity relative to any actions she undertook in the performance of her court-related functions, including processing, docketing, filing, and serving court-related documents.  The claims against her will be dismissed accordingly.

E.  <u>Claims Against Defendant Palmer</u>

Another named Defendant in this action is "Trooper Palmer," a law enforcement officer with the Pennsylvania State Police who issued the citation against Winston for summary harassment based on his dispute with Daniels.  Although Winston has not

directed any particular averments at Trooper Palmer specifically, he does allege that Daniels gave false information to the "police," that the "police" interviewed him as well as two other eye witnesses, and that, despite a lack of evidence to support any criminal charges, he was arrested. He claims that, on the day of his dispute with Daniels, his sister reported having no injuries, yet she went to the hospital several seeks later because "someone told her to… ." Winston further complains (vaguely) that there were "no records from hospital" [sic] and that his case was handled corruptly, based on perjury, and in such a manner that it would not be heard in front of a jury.

Courts within this circuit have recognized a federal cause of action under §1983 based upon the claim that a false arrest violated a plaintiff's Fourth Amendment right not to be subjected to an unreasonable seizure. To state such a claim, however, a plaintiff must show that: (1) a Fourth Amendment seizure occurred, and (2) the seizure was made without probable cause. *See Gavlock v. Deniker*, 2005 WL 1273582 at *9 (M.D. Pa. May 27, 2005) (*citing Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988)).

Similarly, federal courts have recognized a federal cause of action based on malicious prosecutions that violate the Fourth Amendment. "To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Ellis v.*

24

*Vergara*, 2009 WL 4891762 at *5 (D.N.J. Dec. 15, 2009) (*citing Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir.2007)).  *See also Hartman v. Moore*, 547 U.S. 250 (2006).

Under both theories, the alleged facts must support a finding that the plaintiff suffered a deprivation of liberty consistent with the concept of a Fourth Amendment "seizure."  Here, however, Winston was merely issued a non-traffic citation based on a summary offense and was never taken into custody, otherwise restrained, or required to post bail.  *(See* Ex. 1 to Motion to Dismiss [21-1].*)*[3]  He pleaded not guilty to the citation, appeared at the Magistrate Judge's office for a summary trial, and was found not guilty. (*Id.)*  Accordingly, Winston cannot establish that he was subjected to a seizure in the Fourth Amendment sense based on Trooper Palmer's issuance of the non-traffic citation.  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1235-36 (11th Cir.2004) (plaintiff's requirement to pay $1,000 bond and defend herself in court was insufficient to constitute a seizure under the Fourth Amendment); *Ickes v. Flanagan*, Civil Action No. 3:2007-143, 2009 WL 506862 at *1 (W.D. Pa. Feb. 27, 2009)(issuance of citation for

---

[3] Although this matter is being decided pursuant to Fed. R. Civ. P. 12(b)(6), we consider the document appended to Defendant Palmer's motion to dismiss inasmuch as it constitutes an official court document whose authenticity cannot reasonably be questioned and it is intimately related to matters raised in Winston's complaint.  *See Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119,  125 n.2 (3d Cir. 2010) (noting that a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs [sic] claims are based on the document") (citation and internal quotation omitted) (quoting *Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir.2008)).  In addition, this Court may take judicial notice of the magisterial proceedings in connection with this Rule 12(b)(6) adjudication.  *See O'Boyle v. Braverman*, No. 08-3865, 337 Fed. Appx. 162, 164, 2009 WL 2038654 at **1 (3d Cir. July 15, 2009) (to resolve a Rule 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint).

summary offense and imposition of a fine did not constitute malicious prosecution in violation of the Fourth Amendment where plaintiff was never arrested); *Gavlock v. Deniker*, No. 4:04-CV-0247, 2005 WL 1273582 at *5 (M.D. Pa. May 27, 2005) (plaintiff did not suffer a deprivation of liberty consistent with the Fourth Amendment's concept of seizure merely because he received a summary citation for shooting the elk and was required to attend trial on the summary offense); *Neidlinger v. Brennan,* No. CIV. A. 96-CV-2704, 1998 WL 254019 at *1-2 (E.D. Pa. May 5, 1998) (summary offense citations, allegedly issued without probable cause, did not violate plaintiff's Fourth Amendment right against unreasonable seizures where there was no restraint on plaintiff's freedom of movement).

The complaint also alleges – albeit without any reference to Trooper Palmer personally – that reports were made to "the cops" concerning child abuse allegedly perpetrated upon Daniels' grandchildren, but the police failed to respond to the reports. These allegations are insufficient to state a § 1983 claim against Trooper Palmer because, as we have already discussed, § 1983 claims must be premised upon a defendant's personal involvement in the alleged misconduct.  *See McQueen, supra*. Winston's allegations utterly fail to show any personal involvement on the part of Trooper Palmer relative to the alleged failure by police officers to respond to complaints of child abuse.

Moreover, Winston cannot establish the violation of any personal federal right stemming from law enforcement's failure to arrest or prosecute the individuals who allegedly perpetrated child abuse against Daniels' grandchildren.  *See United States v. Batchelder*, 442 U.S. 114, 124 (1979) (discussing prosecutorial discretion); *Linda R.S.*

*v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, No. No. 09-31000, 2010 WL 774185 at *2 (5th Cir. Mar. 8, 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Sanders v. Downs*, Civil Action No. 3:08-CV-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar. 9, 2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Fuchs v. Mercer County*, 260 Fed. Appx. 472, 475 (3d Cir. 2008) (alterations in the original); *Nedab v. Lencer*, Civil Action No. 06-54 Erie, 2007 WL 853595 at *3 (W.D. Pa. Mar. 20, 2007) (plaintiff lacked standing to assert constitutional violation premised on state police officer's alleged failure to investigate and file criminal charges related to assault against plaintiff).

Finally, the Court notes that Winston has submitted as "evidence and testimony" a news account referring to complaints by citizens of McKean County about state troopers operating within the County. The newspaper article includes accounts by some residents that state troopers were being too aggressive in pulling cars over or in filing charges in cases of suspected drunk driving. The Court also notes the news accounts appended to the complaint which discuss Mayor Riel's dispute with certain law enforcement officers relative to suspicions that he was being framed for drug dealing charges. Some of these news stories recount suspicions on the part of the alleged victims that law enforcement officers were operating out of retaliatory motives.

While Winston appears to suggest that there is a general conspiracy among law enforcement in McKean County to violate citizens' rights, the Court notes that none of the appended news accounts concern alleged misconduct on the part of Trooper Palmer. Nor do any of the news accounts have anything to do with the factual allegations raised in this litigation. Accordingly, nothing in these materials can be construed as supporting a viable § 1983 claim against Trooper Palmer based on the events giving rise to this lawsuit. Mere generalized allegations of corruption and conspiracy fail to satisfy the standards set forth under *Twombly, Iqbal, and Fowler*. Because Winston has failed to state a viable claim against Trooper Palmer, any claims against him will be dismissed.

F. <u>Claims Against Defendant Antalics</u>

Also named as a Defendant is Christopher Antalics, an attorney employed at Northwestern Legal Services in McKean County. Other than listing Antalics as a Defendant, the complaint makes no factual averments directed against him specifically. Presumably, however, Antalics has been named because he represented Daniels in connection with her request for a final PFA order against Winston. Winston somewhat vaguely alleges that he attempted to get information about the PFA from "Northwest Legal," that he contacted its offices in Erie and Bradford, and that he eventually discovered that a final order had been entered without a proper court proceeding, in violation of his rights. It appears, therefore, that Winston is complaining about the issuance of the PFA order against him and that he somehow seeks to hold Defendant Antalics liable for having represented his sister at the final court hearing.

28

Plaintiff's allegations are patently insufficient under *Twombly, Iqbal, and Fowler* insofar as they relate to Defendant Antalics. Giving Winston's complaint the benefit of every generous and sensible construction, he seems to be lodging a § 1983 claim against Defendant Antalics based on the alleged violation of his constitutional rights. Such a claim is patently meritless, however, because Winston has not alleged that Antalics acted under color of state law. Although private actors can sometimes be held liable under § 1983 when they act in concert with public officials*, see Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir. 1977), no such allegations have been made, other than Winston's vague, threadbare and conclusory allegation that all of the named Defendants have somehow conspired against him. As we have previously discussed, the mere invocation of the term "conspiracy" is insufficient to satisfy the pleading standards under *Twombly*. Our circuit court of appeals has stated that a conspiracy claim "must include at least a discernible factual basis" to survive dismissal. *Thakar, supra*, at *2 (citation omitted). Winston's mere assertion that a "conspiracy" existed, without more, is clearly insufficient to state a federal claim against Antalics. *See Brookhart v. Rohr*, 2010 WL 2600694 at *2 (3d Cir. June 30, 2010) (district court properly concluded that plaintiff's vague allegations of a conspiracy to defraud him of his property did not satisfy plausibility standard").

Moreover, to the extent Winston is attacking Antalics' role in helping Daniels secure what he considers a wrongful and unjust final PFA order, he is necessarily calling into question the validity of that order. For the reasons previously discussed, this Court is precluded, under the *Rooker-Feldman* Doctrine, from reviewing or adjudicating

a final judgment rendered by a state court.  Accordingly, the complaint states no valid federal claim against Defendant Antalics.

G. Claims Against Defendant Daniels

Defendant Daniels is the only Defendant who has not yet responded to the complaint.  Nevertheless, pursuant to 28 U.S.C. § 1915(e)(2)(B), I must independently review any putative federal claims against Daniels and dismiss them to the extent they are frivolous, lack a cognizable basis for awarding relief, and are incapable of curative amendment.

Federal courts are courts of limited jurisdiction; accordingly, every case begins with the presumption that the court lacks jurisdiction to hear it.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In a Rule 12(b)(1) motion, the party invoking jurisdiction has the burden of demonstrating that subject matter jurisdiction exists.  *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

Here, the Court finds no basis for exercising federal subject matter jurisdiction over Winston's claims against his sister.  Because they are non-diverse parties, no basis exists for exercising jurisdiction pursuant to 28 U.S.C. § 1332.  Moreover, with respect to the various provisions of federal statutory or constitutional law cited in the complaint, most are either facially inapplicable to the facts alleged, or they do not provide any private right of action of which Winston may avail himself.

To the extent Winston would attempt to assert a § 1983 claim against his sister, that type of claim fails because Daniels is not alleged to be a state actor.  Although, as

30

we have discussed, private actors can sometimes be held liable under § 1983 when they act in concert with public officials, *see Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir. 1977), no such allegations have been made with regard to Daniels, other than Winston's vague, threadbare and conclusory allegation that all of the named Defendants have somehow conspired against him. Here again, Winston's mere invocation of the term "conspiracy" is insufficient to satisfy the pleading standards under *Twombly.* For the reasons previously stated, the complaint fails to include any factual basis to support the existence of the elements of a conspiracy. *See Thakar, supra*, at *2. Thus, Winston's mere assertion that a "conspiracy" existed, without more, is clearly insufficient to state a federal claim against Daniels.

Even if he could overcome this deficiency by establishing that Daniels was acting under color of state law, Winston could not establish a viable § 1983 claim for malicious prosecution or false arrest for the reasons previously discussed – i.e., his facts fail to establish a restraint on his liberty consistent with a Fourth Amendment "seizure." Furthermore, his request for relief in the form of an order that would void the state court PFA orders is barred by the *Rooker-Feldman* doctrine.

To the extent Winston is attempting to assert claims against Daniels based on legal concepts such as "real estate fraud," "fraudulent misrepresentation," "hate crimes," or "torture," this provides no basis for federal jurisdiction, as these are not legal theories which provide a private right of action under either federal common law principles or federal statutory law. And, as we have already mentioned, there can be no jurisdiction under 28 U.S.C. § 1332 to adjudicate such theories as a matter of state law, because the parties are not diverse.

Finally, for the reasons previously discussed, Winston cannot establish the violation of any federal right stemming from law enforcement's failure to arrest or prosecute Daniels (or her other family members) for alleged child abuse. Nor do the various provisions of the federal criminal code cited by Winston grant him the authority to enforce those provisions himself. *See, e.g.*, *Walthour v. Herron*, Civil Action No. 10-01495, 2010 WL 1877704 at *3 (E.D. Pa. May 6, 2010) (no private right of action exists under 18 U.S.C. §§ 241, 242, 245, 247, 371 or 1951) (slip copy); *Jones v. Lockett*, 2009 WL 2232812 at *8 (W.D. Pa. July 23, 2009) (slip copy) ("It is clear that the criminal statutes invoked by Plaintiff, i.e., 18 U.S.C. §§ 241, 371 and 1341 do not provide for a private cause of action. In other words, those statues do not confer a right to a person.") (collecting cases); *Pankey v. Webster*, 816 F. Supp. 553, 559 (W.D. Mo.1993) (18 U.S.C. § 4 defines a criminal offense and does not provide civil complainants with a private right of action); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n. 1 (S.D.N.Y.1985) (no private right of action under 18 U.S.C. §§ 4, 241, 242, 245, 246, 286, 371, 1711, 1726, 1901 or 2071(b)); *People ex rel. Snead v. Kirkland*, 462 F. Supp. 914, 920 (E.D. Pa.1978) ("[18 U.S.C. § 245] permits federal prosecution for interference with a long list of federally protected activities; it confers neither substantive rights nor a private right of action for damages"). Accordingly, based on the allegations in the complaint, the materials appended thereto, and Winston's other filings of record, I conclude that Winston has patently failed to state any cognizable basis for relief against Daniels under federal law.

## IV. CONCLUSION

Our Circuit Court of Appeals has instructed that, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir.2008)). This Court has read all of Winston's filings in this case with an eye toward further factual averments which might cure the deficiencies in the complaint. However, since Winston's allegations – to the extent they are comprehensible – suggest no basis for the existence of a viable legal claim, I find that further amendment would be futile. Accordingly, his putative claims based on federal law will be dismissed with prejudice.

As we have noted, the complaint also cites, as a basis for federal "jurisdiction," generic legal theories such as "real estate fraud," fraudulent misrepresentation," and "malicious prosecution." It is not clear whether Winston is purporting to assert these theories under state law. In any event, however, in light of the dismissal of his federal law claims, and there being no diversity of citizenship between Winston and any of the named Defendants, and finding no consideration requiring the retention of Winston's putative state law claims, this Court, in its discretion and pursuant to 28 U.S.C. § 1367, declines to exercise supplemental jurisdiction over Winston's putative state law claims, if indeed he is asserting any. Accordingly, those claims, to the extent they are being asserted, will be dismissed without prejudice.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL WINSTON,           )
                                            )
                 Plaintiff,        )       Case No.  1:10-cv-74-SJM
                                              )
       v.                             )
                                              )
KAREN DANIELS, *et al.*,        )
                                            )
                 Defendants.     )

**O R D E R**

AND NOW, *to wit*, this 8th Day of July, 2011, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS ORDERED that the motions to dismiss the complaint filed on behalf of Defendants Pavlock and Todd [16], Defendant Palmer [21], Defendant Antalics [30], and Defendants Learn and Howard [33] shall be, and hereby are GRANTED and all claims against said Defendants under federal law shall be and hereby are DISMISSED with prejudice.  To the extent Plaintiff is asserting claims against these Defendants under state law, said claims are DISMISSED without prejudice.

IT IS FURTHER ORDERED that, pursuant to the power granted to courts under 28 U.S.C. § 1915(e)(2)(B), Plaintiffs' federal claims against Defendant Daniels shall be, and hereby are, DISMISSED with prejudice.  To the extent Plaintiff is asserting claims

against Defendant Daniels under state law, said claims are DISMISSED without prejudice.

s/ <u>Sean J. McLaughlin</u>

SEAN J. McLAUGHLIN
United States District Judge

cm:  All parties of record.